And again he says:

"The elector is made the judge of his own qualifications, and his conscience takes the place of the judgment and decision of every other tribunal for that occasion. The inspectors may probe his conscience, and instruct and advise, but they cannot decide upon his qualifications."

Fraudulent registration, or an attempt to offer to register in any election district by any person not having a right to register therein, is made a felony, and the punishment prescribed for the offense is imprisonment in a state prison. People v. McNally, 59 How. Pr. 500. The supreme court of the United States has held that, where no record of naturalization can be produced, evidence that a person having the requisite qualifications to become a citizen did in fact and for a long time vote and exercise rights belonging to citizens is sufficient to warrant a jury in inferring that he has been duly naturalized as a citizen. Boyd v. Nebraska, 143 U. S. 135, 12 Sup. Ct. 375. Substantially the same rulings have been made by Dugro, J., in People v. Board of Inspectors, N. Y. Law J. Oct. 22, 1889, and by Barrett, J., in People v. Murphy, N. Y. Law J. Oct. 31, 1891; and such is the opinion of the corporation counsel of New York,—the result of which is that if a party applying for registration has the best evidence in his possession, i. e. the naturalization papers, he should produce them; if they cannot be found, secondary evidence of their contents must be received. Such being the law, and the facts presented by the relators bringing their cases within the principles of the adjudications, nothing can be done except to require the respondents to place upon the registry of voters the names of the relators as qualified voters, provided they take the necessary preliminary oath to entitle them to registration; and a mandamus to this effect must issue. If at the time the final writ herein is served the board has adjourned, it may reconvene on election day, or sooner, as may suit the convenience of all concerned, and make the appropriate entries. Mandamus granted.

---

(10 Misc. Rep. 198.)

### In re BEYEA'S ESTATE.

(Surrogate's Court, Orange County. November, 1894.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—LIMITATION.
   The statute of limitations does not begin to run against an accounting by an administrator until he has openly repudiated his duties.
2. SAME—RECEIVER IN SUPPLEMENTARY PROCEEDINGS.
   A receiver in supplementary proceedings of a judgment debtor legatee may require an accounting by the executor.

Application by a receiver in supplementary proceedings of a judgment debtor to compel the executor of a will, under which the judgment debtor was a legatee, to account. Granted.

Dill & Cox and W. Vanamee, for petitioner.
J. C. R. Taylor, for executor.

COLEMAN, S. An application by a receiver in supplementary proceedings to compel an executor to account. The testator died

August 21, 1877, and letters testamentary were granted September 14, 1877, to Samuel and Nathaniel Beyea. By his will the testator gave to his widow "all his real estate, goods, chattels, and notes, money, and all other personal property, * * * to hold the same during her natural life," and, at her death, he gave to his four children (said executors being two of them) equally all his "real estate, goods, chattels, notes, money, and all other property which I shall have at the time of my death, or the death of my wife." The testator's wife survived him, and died in February, 1894. The petitioner was appointed receiver, etc., of the son Samuel Beyea, September 28, 1877. It was decided in Re Van Dyke, 44 Hun, 394, that an administrator with the will annexed could not be compelled by the surrogate's court to render an account after $7\frac{1}{2}$ years from the date of his appointment, because of the statute of limitations; and the law as there decided was afterwards followed by the surrogate of Westchester in the case of an executor (In re Dunham's Estate [Surr.] 6 N. Y. Supp. 563), and by the surrogate of New York in the case of an administrator (In re Clayton's Estate [Surr.] 5 N. Y. Supp. 266). But afterwards, in Re Camp, 126 N. Y. 377, 27 N. E. 799, the court of appeals decided that a general guardian could be compelled to render an account 16 years after his ward became of age, because the fund received by him as guardian was the property of another confided to his care; and in that sense he occupied the position of a trustee, so as to prevent the running of the statute of limitations, even if it was not a "trust," in the usual legal sense of the term. There are some distinctions between the nature and duties of the office of an executor and an administrator and those of a general guardian, but I doubt if they be of such a character as to place them outside of the application of the decision in Re Camp, when so broad a character, as to their duties to account, is given such officers. Executors and administrators are appointed to take the custody and care of the property of others, impressed with certain duties and trusts, which they must discharge in order to be relieved, either by their actual performance or by the presumption of their having been performed; and it would seem that this presumption will not arise until such duties have been openly repudiated for the statutory period, and does not by the expiration of the statutory period after the time fixed for them to account. In re Grandin (Sup.) 15 N. Y. Supp. 946; In re Camp, supra.

It is claimed on behalf of the executors that they should not be required to give an account of the personal property, because the will gave the widow the right to hold it during her life, and there is no proof that any part of it has since her death come into their hands. This is not tenable, because the widow was only entitled to the possession of such of the personal property as could only be used by having the possession, and possibly even such should have been converted. The executor should, however, have retained the custody of moneys and securities, and only paid over the income. A receiver in supplementary proceedings of a judgment debtor legatee may require an accounting by an executor. In re Rainey's Estate, 5 Misc. Rep. 367, 26 N. Y. Supp. 892.

An order will therefore be made requiring the executor Samuel G. Beyea (he being the only one served) to render an account. Ordered accordingly. ·

---

(82 Hun, 98.)

### COOLEY v. LOBDELL.

(Supreme Court, General Term, Fourth Department. December 7, 1894.)

1. STATUTE OF FRAUDS—RATIFICATION OF ORAL PROMISE.
    A letter in which the sender promises: "I will surely do as I agreed. I will give you a deed of the sixty acres,"—is not sufficient under the statute of frauds to validate a previous oral contract to convey, since the consideration is not expressed or the property sufficiently described.

2. SPECIFIC PERFORMANCE—PAYMENT OF PURCHASE MONEY.
    Payment of consideration is not such a part performance of an oral contract to convey land as would entitle the vendee to specific performance.

3. STATUTE OF LIMITATIONS—WHEN CAUSE OF ACTION ACCRUES.
    Where a wife furnished her husband with money to build a house under an oral agreement that, when it was finished, he would convey it to her, together with certain land which he subsequently sold to another, her right of action for specific performance having accrued when the house was finished, the statute of limitations begins to run from that time against the right to recover the price of the land sold. ·

Appeal from circuit court, Broome county.

Action by William Cooley against Elmina E. Lobdell, as administratrix of the estate of Gideon Lobdell, deceased, to recover the price of land sold by decedent. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

A. D. Wales, for appellant.
Carver, Deyo & Jenkins, for respondent.

MERWIN, J. Olive Cooley, a daughter of the plaintiff, married Gideon Lobdell, defendant's intestate, in 1864. They had one child, who died in 1878. Lobdell, in 1871, became the owner of a farm of 160 acres in the town of Conklin, in the county of Broome, and on the east side of it there was an old house. In 1874, Solomon Bunnell, the grandfather of Olive, died, and she was one of his heirs. From him, before he died, or from his estate, after he died, and prior to 1876, she received about the sum of $4,000. There is evidence tending to show that in the fall of 1874, or early in 1875, it was verbally agreed between Olive and her husband that she would let him have her money to enable him to build a new house on the west side of the farm, and that, when the house was done, he would deed it to her, together with 60 acres, the western part of the farm. One witness testifies as follows:

"While I was there on my visit, Gideon said to me: 'Mother, I am going to tell you what I have been thinking of doing, or would like to do; that is, divide the farm, run off sixty acres, and build a house on it, and move there. But I can't do it unless Olive will let me have the money to build the house with.' Olive says: 'He offered me his note if I would let him have the